<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AMERICAN FINANCIAL RESOURCES, INC.,**<br><br>      **Plaintiff**,<br><br>  **v.**<br><br>**NATIONSTAR MORTGAGE, LLC,**<br><br>      **Defendant.** | **Civil Action No. 14-7555 (CCC)**<br><br><br><br><u>**OPINION**</u> |

<u>**Falk, U.S.M.J.**</u>

This matter comes before the Court upon Defendant Nationstar Mortgage, LLC's motion to transfer venue to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). (CM/ECF No. 8.)  Plaintiff American Financial Resources, Inc. opposes the motion and cross-moves to maintain venue in the District of New Jersey.  (CM/ECF No. 11.)  The motions are decided on the papers.  Fed. R. Civ. P. 78(b).  For the reasons set forth below, Defendant's motion to transfer is **denied,** and Plaintiff's cross-motion is **granted.**

## BACKGROUND

**1.  The Parties**

Plaintiff American Financial Resources, Inc. ("AFR") is a New Jersey corporation in the business of originating, brokering, and servicing mortgage loans throughout the United States.  (Compl. ¶ 1.)   Defendant Nationstar Mortgage, LLC ("Nationstar") is a Texas mortgage servicing company engaged in the administration of mortgage loans. (Declaration of Matt Wharton ("Wharton Decl.") ¶ 3.)

This dispute concerns an agreement between the parties regarding the servicing of mortgage loans.  AFR claims Nationstar breached the agreement in numerous ways resulting in damages greater than 10 million dollars.  Nationstar apparently claims that AFR has failed to pay about 13 million dollars due under the agreement.

**2.  Factual Background**

On August 1, 2011, AFR and Aurora Bank, FSB ("Aurora"), entered into a subservicing agreement ("Servicing Agreement") pursuant to which Aurora agreed to perform loan servicing on certain mortgage loans owned by AFR.  (Compl. ¶ 4.)  On March 26, 2012, the Servicing Agreement was amended and Nationstar replaced Aurora as the servicer on a pool of mortgage loans owned by AFR.  (Id. ¶ 5.)  Nationstar's performance under the Servicing Agreement included, *inter alia*, contacting borrowers, amending borrower payment plans, and working to maximize revenue from defaulted loans.  ( Wharton Decl. ¶ 3.)  According to Nationstar, as subservicer, it was obligated to

2

advance delinquent principal and interest payments to investors and was entitled to reimbursement from AFR of advances in the event of a change of subservicer. (Declaration of Michael McKleroy ("McKleroy Decl.") Ex. 1, ¶ 9.)  Upon succeeding Aurora, Nationstar made certain principal and interest advances on behalf of AFR to investors, which eventually totaled approximately 24 million dollars.  (McKleroy Decl. Ex. 1, ¶ 20.)

**3.  Lead up to Litigation**

The parties largely dispute the facts and circumstances precipitating the commencement of AFR's lawsuit in the District of New Jersey.  According to Nationstar, on January 29, 2014, it exercised its contractual rights and gave written notice to AFR that it was terminating the Servicing Agreement.  (McKleroy Decl. Ex. 1, ¶ 12.) Nationstar contends that in June 2014, the parties agreed in principle that AFR would pay Nationstar its outstanding advances by August 31, 2014.  (Id.)  Nationstar alleges that despite the parties' June 2014 agreement, AFR refused to reimburse Nationstar by the August deadline.  (Id. ¶ 13.)  The advances owed to Nationstar exceeded $24 million. (Id.)  On September 4, 2014, Nationstar's counsel issued a demand letter to AFR seeking repayment of all outstanding sums under the Servicing Agreement, and warning that should AFR fail to comply, Nationstar would take all steps to recover the proceeds, including filing suit.  (McKleroy Decl. ¶ 3.)

AFR made a partial payment of nearly $11 million to Nationstar in September 2014, but refused to make additional payments.  (Id.)  On December 2, 2014, Nationstar's counsel orally informed AFR's counsel that Nationstar would provide AFR until December 4, 2014, to pay all outstanding sums, and that if AFR refused Nationstar would file suit in Texas.  (Id. ¶ 5.)  In a letter to AFR the same day, Nationstar reiterated its demand that AFR remit payment by December 4, 2014, and reserved the right to take all appropriate actions if the deadline were not met.[1]  (Id.)  According to Nationstar, AFR did not respond to its demand; instead it commenced the instant action the following day, December 3, 2014.

AFR has a different story.  AFR alleges that within the first year of Nationstar replacing Aurora, AFR realized that Nationstar was exhibiting a pattern of "short falls" associated with the servicing performance.  (Declaration of Joseph Burns ("Burns Decl.") ¶ 3; Declaration of John Baldini ("Baldini Decl.") Ex. E, ¶ 4.)  According to AFR, these "short falls" became the subject of a long series of communications between AFR and Nationstar.  Having received notification from Nationstar on January 29, 2014, that it was terminating the Servicing Agreement, AFR claims that it continued working with Nationstar through the end of the contract to try to resolve Nationstar's servicing errors. (Baldini Decl. ¶¶ 4-5.)  Following Nationstar's demand letter to AFR on September 4, 2014, AFR paid Nationstar approximately $11 million. (Id.)   AFR maintains that

---

[1]AFR challenges Nationstar's contention and argues that the December 2, 2014 letter does not contain such a reservation.

discussions and correspondence continued among the parties over several months but that the parties failed to come to an agreement on any remaining amount due.  (Pl.'s Br. 3.) AFR claims that it spent an inordinate amount of time documenting its claims and offsets, and detailing its financial harm allegedly caused by Nationstar's failure to properly service AFR's mortgage loans.  (Baldini Decl. Ex. E, ¶ 4.)  AFR disputes Nationstar's contention that it advised AFR that it would file suit in Texas if the amounts allegedly due were not paid by December 4, 2014.   Rather, AFR contends that during a conversation between counsel for AFR and Nationstar on December 2, 2014, Nationstar suggested that AFR's remedy was to file suit if it believed that it had been damaged by Nationstar.

## 4.  <u>Commencement of Competing Lawsuits</u>

On December 3, 2014, one day following Nationstar's latest demand letter, AFR filed a five count Complaint in this District.  The Complaint asserts claims for breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, and also seeks indemnification and attorney's fees.  The next day, on December 4, 2014, Nationstar filed suit against AFR in the Eastern District of Texas asserting claims for, *inter alia*, breach of contract, promissory estoppel, and unjust enrichment seeking repayment of all outstanding amounts due under the Servicing Agreement.  (McKleroy Decl. Ex. 1.)

On January 12, 2015, AFR filed a motion to dismiss or transfer in the Texas action.  Nationstar cross-moved to stay.  On April 23, 2015, the Eastern District of Texas denied AFR's motion and stayed the action pending a decision by this District on

Nationstar's motion to transfer.  Currently, both the AFR and Nationstar Complaints are pending in the District of New Jersey and the Eastern District of Texas, respectively.

## 5.  **The Parties' Motions**

On January 21, 2015, Nationstar moved to transfer venue to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).  Nationstar essentially asserts two arguments in support of transfer.  First, Nationstar contends that AFR's Complaint is an anticipatory strike suit and its choice of forum is not entitled to deference.   In support of this argument, Nationstar points to the timing of AFR's filing– one day before Nationstar's deadline for AFR's payment of alleged outstanding sums and one day after Nationstar advised AFR that it would bring suit if the parties were unable to resolve Nationstar's claims.[2]  Second, Nationstar asserts transfer is appropriate because the transfer factors under § 1404(a) weigh in favor of a Texas forum.  Nationstar maintains that Texas has substantial connections to the parties' dispute and to Nationstar's former relationship with AFR.  Specificially, Nationstar points out that any purported breaches by Nationstar (which Nationstar denies) would have taken place in Nationstar's main offices in Texas.

On February 4, 2015, AFR opposed the motion and cross-moved to maintain venue in this District, arguing that this case has a substantial nexus to New Jersey, and that AFR's choice of forum is entitled to deference.  Rejecting Nationstar's anticipatory strike argument, AFR contends that its first-filed action is not an anticipatory filing but a

---

[2]AFR disputes Nationstar's claim that it threatened litigation on December 2, 2015.

6

meritorious suit for damages necessitated by Nationstar's longstanding and continued failure to address AFR's claims for breach.  Challenging Nationstar's description of the events leading up to the commencement of this action and contending that the record demonstrates AFR's proffered factual sequence,  AFR maintains that Nationstar has failed to carry its burden that AFR's Complaint was an anticipatory strike.

## DISCUSSION

### A.    Transfer of Venue Pursuant to § 1404(a)

Section 1404(a) confers federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a).  The decision to transfer a case under § 1404(a) rests within the sound discretion of a district court. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973); Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses....'" Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

The moving party bears the burden of establishing that the proposed transferee forum is more convenient for the parties and witnesses.  See CIBC World Mkts., Inc. v.

Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 643 (D.N.J. 2004) (citations omitted).[3]

The court balances  private and public interest factors to determine whether the litigation

would more conveniently proceed and the interests of justice would be better served by a

transfer.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995) (identifying

private and public interest factors).

**B.**   **Balance of Interests**

The transfer provision identifies certain criteria to be considered: convenience of

parties, convenience of witnesses, and the interests of justice.  28 U.S.C. § 1404(a).   The

Third Circuit articulated a more comprehensive list of public and private concerns

implicated by § 1404(a).  Private concerns include but are not limited to: (1) plaintiff's

original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4)

convenience to the parties in light of their financial and physical condition; (5)

availability of witnesses in each of the fora; and (6) the location of books and records.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995).  Public concerns include

but are not limited to: (1) the ability of each forum to enforce the judgment; (2) practical

considerations that would make trial more expeditious or inexpensive; (3) court

---

[3]As a threshold matter, the reviewing court must first determine whether the action could
have been brought in the transferee district.  Shutte v. Armco Stell Co., 431 F.2d 22, 25 (3d Cir.
1970), cert. denied, 401 U.S. 910 (1971).  The venue statute limits transfer to a district or
division "where [the case] may have been brought." 28 U.S.C. § 1404(a).  An action may be
transferred to another district only if that district would be proper venue for the action and that
forum is capable of asserting subject matter jurisdiction over the claims and *in personam*
jurisdiction over the defendants. See Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006).
The parties do not dispute that the case could have been brought in the Eastern District of Texas.

congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state law in diversity cases. Id.  Thus, courts consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." Id.; see also Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337 (D.N.J. 2003).  The "analysis is flexible and must be made on the unique facts of each case." Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citations omitted).

### 1.    **Private Interest Factors**

### (i) Choice of Forum

Generally, a plaintiff's initial choice of venue is entitled to due consideration. Shutte v. Armco Stell Co., 431 F.2d 22, 24 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971) (citation omitted.).  The Third Circuit has adopted the "first-filed" rule which provides that when two substantially similar cases are pending in two district courts, the court which first has possession of the subject must decide it.  See Equal Employment Opportunity Comm. ("EEOC") v. The University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988).  The "first-filed rule, however, is not rigidly applied.  EEOC, 850 F.2d at 976-77.  One exception to the rule is where the first-filing party initiated an action in anticipation of the other party's imminent suit in a different and less favorable forum.  Id. at 976.  Therefore, although substantial deference is typically given to Plaintiff's choice of forum, the court will afford less deference to the forum choice where the court finds

9

that the action commenced was an anticipatory filing.  See Telebrands Corp. v. Martfive, LLC, 2013 WL 4675558, *7 (D.N.J. Aug. 30, 2013) (citing Church & Dwight v. Mayer Laboratories, Inc., 2010 WL 3907038, *7 (D.N.J. Sept. 28, 2010)); see also Joanna Foods, Inc. v. Coca-Cola Co., 2010 WL 4721521, at *3 (D.N.J. Nov. 15, 2010) ("Although Plaintiff correctly argues that substantial deference is typically given to Plaintiff's choice of forum, the Court affords less deference to Plaintiff's forum choice ...[as] Plaintiff did indeed engage in a race to the courthouse.").

It is entirely conceivable that Nationstar could be considered the "real" plaintiff in the case.   Nationstar contends it initially made a valid claim against AFR—not the other way around.  Specifically, it claims in a September 4, 2014 letter to AFR, Nationstar demanded repayment of all outstanding advances under the Servicing Agreement and warned that should AFR fail to comply, Nationstar would take all steps necessary to recover the sums, including filing suit.

However, it is equally conceivable that AFR is the legitimate first filing plaintiff. Indeed, AFR challenges Naionstar's sworn statement that its counsel verbally advised AFR that Nationstar would file suit in Texas.  In addition, AFR swears under oath that its first-filed New Jersey complaint stemmed from longstanding and ongoing breaches by Nationstar.  In sum, the proofs on this issue are essentially equal and their resolution depends on which parties' sworn submissions are accredited.  Under such circumstances the moving party has failed to carry its burden that the New Jersey case was a strike suit.

10

Still, since it is so close, the Court will give very little deference to Plaintiff's choice of forum, and proceed to decide the motion on the remaining transfer factors. Unfortunately for Nationstar, the remaining factors are also in virtual equipoise and thus this Court cannot conclude that the moving party, Nationstar, has met its clear burden to demonstrate that transfer is warranted or in the interests of justice.

(i) Center of Gravity

Courts often discuss the true "center of gravity" of the dispute when analyzing transfer. See Travelodge Hotels, Inc. v. Perry Developers, Inc., 2011 WL 5869602 (D.N.J. Nov. 22, 2011). Courts give less weight to a plaintiff's forum when it has little connection to the facts of a case. See Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 521 (D.N.J. 1998); Honeywell, 817 F. Supp. at 481-482; Amer. Tel. & Tel. Co. v. MCI Commc'ns Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990) (citations omitted). That is the case here.

Once again nothing tips the scale in this consideration. AFR is in New Jersey. Nationstar is in Texas. Both parties operate all around the country. AFR contends that each and every loan in issue was "originated" and underwritten in New Jersey, and that each and every loan file is in AFR's possession in New Jersey. (Opp'n Br. 10.) These are important facts. Still, it is not really clear how much these facts have to do with the

actual contract dispute.  The thrust of AFR's Complaint is that Nationstar breached the Servicing Agreement by failing to properly service the loans.

Nationstar says any alleged breach would have to have occurred in Texas, however, it doesn't explain how or why.  If servicing means, e.g., contacting borrowers, that would seem to occur where the borrowers were located.  Indeed, Nationstar contends it performed all of its core functions under the Servicing Agreement in Texas.  (Wharton Reply Dec. ¶ 2.)  What does that mean?  Once again, no details, no examples, no explanations were provided.

Also, while AFR maintains the loan files are in New Jersey, Nationstar says that it retains a copy of all of its files concerning the servicing function at its Texas offices. (Wharton Dec. ¶ 6; Wharton Reply Dec. ¶2; Def.'s Reply 7.)  AFR also claims this case has a strong connection to New Jersey because Nationstar's alleged deficiencies in servicing the loans may have harmed homeowners who are located throughout the country and who could possible bring third-party claims in this District.  So, where is the true "center of gravity" of the dispute?  It's not really clear.  Where was the contract entered?  What does AFR really claim Nationstar did to breach it?  Was it correspondence and telephone calls?  Electronic entries?  Where can it be said this occurred?  Where are the borrowers?  Where are the decision makers?  Despite a searching analysis of the 100s of pages of briefs and attachments submitted, the Court can discern no compelling answer to this question.  Once again, the movant has not carried its burden.

(ii) <u>Convenience of the Parties</u>

The convenience of the parties is an important factor in a transfer analysis.  But neither party makes a persuasive case here.  Courts look to the relative physical and financial condition of parties in evaluating convenience.  <u>Santi v. Nat'l Business Records Management, LLC</u>, 722 F. Supp. 2d 602, 608 (D.N.J. 2010).  Either AFR or Nationstar may be required to engage in some travel depending on where the case is heard. No genuine evidence of convenience of the parties has been offered.

(iii) <u>Availability of Witnesses and Access of Proof</u>

Convenience of witnesses and access to sources of proof are important considerations in the 1404(a) analysis.  <u>See Teleconference Sys. v. Proctor & Gamble Pharm., Inc.</u>, 676 F. Supp. 2d 321, 331 (D. Del. 2009).  In deciding a motion to transfer, courts often distinguish between party and non-party witnesses.  <u>See Nat'l Prop. Investors VIII v. Shell Oil Co.</u>, 917 F. Supp. 324, 329 (D.N.J. 1995) (citations omitted).  Party witnesses carry less weight because they are presumed as willing to testify in either forum, even if it may be inconvenient.  <u>See Liggett Group Inc. v. R.J. Reynolds Tobacco Co.</u>, 102 F. Supp. 2d 518, 534 n.19 (D.N.J. 2000).  Non-party witnesses, on the other hand, may be compelled to attend only by the subpoena power of federal courts.  <u>See</u> Fed. R. Civ. P. 45(b)(2) (limiting the federal subpoena power to within 100 miles of the courthouse).  Compulsory process over non-party witnesses has been referred to as the

13

single most important factor in a 1404(a) analysis.  See Teleconference Sys., 676 F. Supp. 2d at 333 (citing In re Genentech. Inc., 566 F.3d 1338 (Fed. Cir. 2009)); In re Consolidated Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998).  A forum's inability to reach non-party witnesses outside of this radius is therefore an important factor weighing against transfer.  See LG Elecs., Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 590-591 (D.N.J. 2001).

 AFR maintains that its employees and its non-party witnesses are in New Jersey, Colorado, Nebraska and Virginia.[4]  (Pl.'s Br. 16; Burns Decl. ¶ 7.)  However, AFR somewhat candidly states that the location of the true "operative" witnesses are not known at this juncture.  (Pl.'s Br. 16.)   Although AFR may rely on its employees and non-party witnesses to support their claims, it fails to identify the specific witnesses it believes are located in New Jersey and the nature of their testimony.

In the most general, conclusory terms, Nationstar says it witnesses are employees in Texas who were involved in carrying out Nationstar's core duties under the Servicing Agreement.  (Wharton Dec. At ¶ 4; Wharton Reply Dec. ¶ 2.)  Nationstar states that nearly forty Texas Nationstar employees performed tasks related to Nationstar's duties under the Servicing Agreement.  (Wharton Reply Dec. ¶ 2.)  Of these forty employees,

---

[4]AFR claims that Nationstar employees in Nationstar's Scotts Bluff, Nebraska office are involved with Nationstar's alleged breaches.  (Pl.'s Br. 15.)  In particular, AFR claims that as a result of Nationstar's alleged breaches it was the subject of a Ginnie Mae audit managed by an employee located in its Scotts Bluff office.  (Declaration of Joe Burns ¶ 6.)

apparently a few of them are no longer employed by Nationstar, but continue to live in

Texas.  (Wharton Dec. ¶ 5.)  However, both sides' presentations on this subject are really

meaningless general speculations. "[T]he Third Circuit has explicitly stated that

defendants have the burden of proof to 'support their motion to transfer with any

affidavits, depositions, stipulations, or other documents containing the facts that would

tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a).'"

Security Police and Fire Professionals of America Retirement Fund v. Pfizer, Inc., 2011

WL 5080803, at * 7 (D.N.J. Oct. 25, 2011) (quoting Plum Tree, Inc. v. Stockment, 488

F.2d 754, 756-57);[5] see also Bachmann Software & Servs, v. Intouch Group, Inc., 2008

WL 2875680 (D.N.J. July 22, 2008) ("The party seeking transfer should support its

motion with affidavits and other documentation that establishes that the interests of

justice and convenience of the parties would best be served by a transfer.")  Thus, this

Court concludes that the Nationstar has failed to meet its burden of persuading on this

factor.

---

[5]"With regard to the convenience of the witnesses, the Plum Tree court noted:

> Examples of such documents would be a list of the names and addresses of
> witnesses whom the moving party plans to call and affidavits showing the
> materiality of the matter to which these witnesses will testify, statements by the
> moving parties of the business difficulties or personal hardships that might result
> from their having to defend against the suit in the district court where it was
> originally brought, affidavits concerning the relative ease of access to sources of
> documentary evidence, and other materials where appropriate."  Security Police
> and Fire Professionals, 2011 WL 5080803, at * 7 (quoting  Plum Tree, Inc.,  488
> F.2d 754 at 757, n.2)).

Access to sources of proof is not a compelling factor for transfer.   AFR contends that its records, many of which include non-electronic format records, are maintained in New Jersey and that they are more voluminous than Nationstar's records.   AFR contends that if the case were transferred it would be required to transport the entirety of its non-electronic format records to Texas.   Nationstar says its records are in Texas.   While it is uncertain how AFR knows that its records are more voluminous than Nationstar's and while it is not abundantly clear how and why a transport of records by AFR would be more onerous than one by Nationstar to this District, the fact remains that either party would need to endure the burden depending on where this case is litigated.   Equipoise again.   Movant has again failed to meet its burden to compel transfer.

## 2. <u>Public Factors</u>

Nationstar has also not established that the public interest factors warrant transfer. Although both states have some interest in adjudication of this matter, the Court is unable to glean the true locus of the dispute.   Nationstar says the loan servicing which forms the basis of the parties' claims primarily took place in Texas.   However, AFR says the entire arrangement and <u>all</u> of the loans originated in New Jersey.   On top of that, the parties seem to agree that the operative contract includes a New York choice of law clause, but has no forum selection clause.

Nationstar next claims that New Jersey is a slightly busier docket and that it takes longer for a case to reach trial in New Jersey than in Texas.  (Def.'s Br. 12.)  Perhaps New Jersey has a heavier weighted caseload but there has been no showing that the difference is significant nor material enough to compel transfer.

\* \* \*

In sum, movant has failed to meet its burden to demonstrate that the interests of justice and the convenience of the parties requires transfer of the case to Texas.  Perhaps the result would be different if the Court was presented with specifics and details.  However, the parties relied largely on diametrically opposed conclusions.  Therefore, the motion is decided on the movant's failure to carry its burden to establish that transfer is warrranted–rather than any deep seated finding that New Jersey is the clearly appropriate forum.

## CONCLUSION

For the reasons stated above, Nationstar's motion to transfer venue to the Eastern District of Texas is **denied**. (CM/ECF No.  No. 31.)[6]  AFR's cross-motion, though technically unnecessary, is **granted**.  A separate Order accompanies this Opinion.

---

[6]On January 20, 2015, Nationstar filed a motion seeking an extension of time to respond to AFR's Complaint until after a ruling on its then anticipated motion to transfer.   (EM/ECF No. 5.) The motion is **granted**.

17

s/Mark Falk _____
**MARK FALK**
**United States Magistrate Judge**

**DATED: July 21, 2015**